# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KAESER COMPRESSORS, INC.,

    Plaintiff,

v.                                                       Case No. 09-C-521

COMPRESSOR & PUMP REPAIR
SERVICES, INC.,

    Defendant.

## DECISION AND ORDER

      Following a jury verdict and this Court's entry of findings of fact and conclusions of law, Plaintiff Kaeser Compressors, Inc. brought a motion seeking amendment of the judgment or, alternatively, a new trial. Defendant CPR brought a motion seeking attorney's fees and actual costs under the Wisconsin Fair Dealership Act (WFDL). I address both motions herein.

**I. Kaeser's Motion for Judgment as a Matter of Law or to Amend the Judgment**

      Given the closeness of the question as to whether the issues in this case warranted a jury trial or a bench trial, I decided a "belt and suspenders" approach was warranted. Therefore, although the case was tried to a jury, which entered a verdict, I also entered my own findings of fact and conclusions of law. It follows from this dual approach that Kaeser's post-judgment motion is itself something of a hybrid. To the extent a jury trial was the proper course, the motion is brought pursuant to Rule 50(b). The standard of review for such a motion is quite limited, a reflection of the fact that a jury has had several days to consider the matters raised and has deliberated on the factual questions posed. Accordingly, I must view the evidence presented in the light most

favorable to CPR, the nonmoving party, and draw all reasonable inferences in its favor. In short, I may grant the motion "only if no reasonable juror could have found in favor of" CPR. *Waters v. City of Chicago,* 580 F.3d 575, 580 (7th Cir. 2009). Given my own findings and conclusions, which were consistent with the verdict, the motion under Rule 50(b) is essentially a non-starter. I agreed with the jury that CPR was a dealership under the WFDL and that Kaeser lacked good cause to terminate the dealership. I am thus unable to conclude that the jury's verdict was unreasonable.

To the extent that the motion challenges my conclusions of law, the motion is brought under Fed. R. Civ. P. 59(e). A Rule 59(e) motion will be granted only in the case of a manifest error of law or fact, or newly discovered evidence. *Bordelon v. Chicago Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000). This is another high standard of review. Like the Rule 50(b) standard, it reflects the fact that the judge has presumably already given his full attention to the issues posed and the public is entitled to have the judge's attention redirected at the hundreds of other cases pending before him. Only in rare circumstances, such as the discovery of new evidence or a "manifest" error of law, will "reconsideration" be granted.

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

The point is that motions after judgment are not an invitation to create an echo chamber to revisit and re-explore the same issues and arguments, and in truth the issues Kaeser now presents have been considered by this Court (and now a jury) so many times, and at such length, that I do not

believe I can reasonably indulge much more of the public's time addressing them. The discussion that follows will therefore be brief.

Kaeser first argues that the focus of inquiry should be its overall nationwide business model rather than merely the relatively successful Wisconsin territory serviced by CPR. In other words, even if a given dealer is performing adequately, the dealer cannot be immune from the grantor's economic problems. That point has been acknowledged in this case from the beginning. This Court explicitly acknowledged that the grantor's economic circumstances are very relevant to the analysis, and that of course includes the nationwide economic situation, not just that of this state. Here, Kaeser's nationwide economic needs allegedly mandated the adoption of the new contract. I concluded, however, (as did the jury) that Kaeser had not provided persuasive evidence supporting its argument that it had a pressing economic need to move forward with the new contracts. Even in its post-judgment briefs Kaeser has continued to rely on vague and abstract notions of uniformity and "systemic flexibility." While these are no doubt among the rational reasons Kaeser went through with its plan (most plans are motivated by rational reasons), that does not say anything about whether these reasons met the WFDL standard of essential and reasonable.

Kaeser also suggests that the Seventh Circuit's recent decision in *Girl Scots of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.,* ("*Girl Scouts II*"), changed the scenery. 2001 WL 2119752 (7th Cir., May 31, 2011). But nearly the entirety of that decision is *dicta* addressing an issue that the court said had been "argued casually." *Id.* at 4. There is certainly nothing groundbreaking in that decision; the court merely held that the national Girl Scouts organization violated the Fair Dealership Law, as it had predicted in *Girl Scouts I,* the preliminary injunction case. In doing so, it rejected the national organization's First Amendment argument and

3

ordered that judgment be granted in favor of the local council. The court further recognized (again, nothing new), that "stripping a dealer of territorial exclusivity granted in the dealership agreement would be an example of such a change [in the competitive circumstances of the dealership]." *Id.* at *6. In this case, we had a dealer who refused to agree to having his exclusivity stripped; whether Kaeser's requirement that CPR sign the agreement and end its exclusivity was the question posed to the jury and to this Court.

Much has been made about the fact that some of the terms in the proposed contract might allow draconian actions on Kaeser's part even while the WFDL would trump Kaeser's ability to act on its newfound contractual freedoms. Kaeser argues that I erred in my impression that because the WFDL would override some of the more aggressive actions Kaeser might take, the new contract could not therefore have been of much use to Kaeser. I am not aware of making such an observation, but if I did it was far from being dispositive of anything. In fact, we have all recognized that the same issue cuts the other way as well: if the WFDL's protections would swoop in and prevent Kaeser from competing too much with CPR, then wasn't CPR being unreasonable in refusing to sign an agreement it knew was partly unenforceable? I have concluded that the answer to the latter question is "no": simply put, even if the WFDL provides a certain level of protection, a dealer is not required to sign an agreement that substantially changes the relationship (here, ending exclusivity) and hope for the best and rely on future litigation to enforce his statutory rights.[1] Despite Kaeser's claim that CPR's case was based on irrational fear, it is not irrational to fear events that have not yet occurred, even if the grantor promises they will not occur, when the grantor is demanding that you sign a contract that lets it do exactly the things you fear.

---

[1] Unless, of course, the grantor has good cause.

4

Kaeser also argues that even if I disagree with it on the WFDL issues set forth above, I should amend the judgment to reflect that it has a right to terminate CPR's dealership in Minnesota. In my decision on summary judgment, I concluded that Kaeser "is entitled to a declaratory judgment indicating that it may terminate CPR's Minnesota territory without running afoul of the WFDL." (Dkt. # 88 at 15.) That Kaeser could terminate without violating the WFDL was the only issue before me at the time, and that is what the judgment entered by the Court declares. I cannot conclude that there would be no other obstacles to a termination because any such issues were not before me. Minnesota may have its own laws limiting the right to terminate dealerships, and nothing the Court was asked to decide in this case addresses any other defenses CPR may have to Kaeser's intended termination of its Minnesota dealership.

Kaeser also asks that the judgment be amended to have each party bear its own costs. It notes that although CPR won the jury trial, Kaeser was a prevailing party in defeating CPR's counterclaims, and it also successfully won a declaration that it could terminate the Minnesota territory without violating the WFDL. Those victories, it argues, were substantial. The counterclaims, however, were primarily defensive counterclaims that were merely a reaction to Kaeser's complaint. And although Kaeser won a declaration regarding the Minnesota territory, the bulk of this case (and its expenses) involved the good cause issue, which was the issue tried to the jury. This is not, therefore, the sort of action in which both sides won similar victories. In my view, CPR prevailed on the most important question, and the most expensive one. It is therefore entitled to costs. *Gorbitz v. Corvilla, Inc.,* 196 F.3d 879, 883 (7th Cir. 1999) ("This court has long held that the 'decision to make the award [of costs] is entrusted to the discretion of the district court.'") (citation omitted).

5

**II. CPR's Motion for Attorney's Fees**

The WFDL provides attorney's fees to a dealer who sues the grantor successfully. The statute reads, in relevant part, "If any grantor violates this chapter, a dealer may bring an action against such grantor . . . for damages sustained by the dealer as a consequence of the grantor's violation . . . including attorney's fees." Wis. Stat. § 135.06. By its plain terms, the statute allows attorney's fees only if the grantor "violates" the WFDL. This was a declaratory action brought by the grantor in an effort to ensure it did *not* violate the WFDL. In addition, Kaeser defeated CPR's counterclaim alleging that it had violated the WFDL. CPR essentially skips over this important point and raises a number of arguments that cannot get past the plain language of the statute. Kaeser did not violate the statute, and so the attorney's fees provision does not apply.

**III. Conclusion**

Kaeser's motion for post-judgment relief is **DENIED**. CPR's motion for attorney's fees and actual costs is **DENIED**.

**SO ORDERED** this 2nd day of September, 2011.

    s/ William C. Griesbach
    William C. Griesbach
    United States District Judge